IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 11, 2017

## STATE OF TENNESSEE v. FREDERIC JERMAINE ARMSTRONG

**Appeal from the Circuit Court for Hardeman County**
**No. 14-CR-80      J. Weber McCraw, Judge**

_____

## No. W2016-01944-CCA-R3-CD

_____

Defendant, Frederic Jermaine Armstrong, was convicted of aggravated assault for the beating of a correctional officer. Defendant's conviction was also subject to a criminal gang enhancement pursuant to Tennessee Code Annotated section 40-35-121(b), which was later vacated because of this Court's ruling in *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016). On appeal, Defendant challenges the sufficiency of the evidence and whether he was properly sentenced to the maximum within the applicable range. Upon review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Bo Burk, District Public Defender, and Shana Johnson, Assistant Public Defender, for the appellant, Frederic Jermaine Armstrong.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Summary*

Defendant was indicted with one count of aggravated assault and one count of criminal gang enhancement. A jury convicted him of aggravated assault at a bifurcated trial. The jury also convicted Defendant of a criminal gang offense pursuant to

Tennessee Code Annotated Section 40-35-121. The criminal gang enhancement was later vacated. The following facts were adduced at trial.

On March 11, 2013, Correctional Officer Timothy Boyd, Sr., was on duty as a floor officer at the Whiteville Correctional Facility in Hardeman County. As Officer Boyd was holding open a door for inmates, he asked Defendant to tuck in his shirt, per Tennessee Department of Correction's rules. Later, when Defendant was reentering from lunch or recreation, his shirttail remained untucked. Having completed his first floor shift, Officer Boyd rotated to working inside "the bubble," a secured area with views of the nearby doors which contained locking mechanisms for those doors. Once there, he wrote Defendant up for "refusing a direct order."

When Officer Boyd rotated back to working on the floor shift, Defendant approached him and asked why he had received a write-up. Officer Boyd said it was because of Defendant's failure to tuck his shirt in after being told to do so, to which Defendant said, "This is a bullshit write-up." Officer Boyd responded, "No, it's not. I asked you to put your shirttail in and you didn't." According to Officer Boyd and video recorded at the scene, Defendant then assaulted Officer Boyd by hitting and knocking him down. Correctional Officer Margaret Brown witnessed the assault from the "bubble" and called for assistance; she was unable to leave for any reason, including helping Officer Boyd.[1] Officer Boyd testified that he did not "antagonize" or "threaten" Defendant prior to the assault.

Joseph Shields, an assistant investigator with the Internal Affairs Department at the Whiteville Correctional Facility, testified that when Officer Brown called for help, "she was very frantic" and "sounded like she was actually herself being assaulted." Investigator Shields testified that Defendant hit Officer Boyd thirty-two times "in the facial area." Tazma Robertson, a family nurse practitioner at the prison who was a first responder to the incident, testified that she considered Officer Boyd's injuries to be "severe" due to "his face appear[ing] to be wide open, bones depressed, eye hanging, massive bleeding, and a severe deformity noted to the left side of his face." Ms. Robertson interpreted a CAT scan for the trial court and noted fractures to Officer Boyd's nose and the bones around the left eye, a depression of the bone under the left eye, torn muscles around the eye, and a "displaced" palate.

John Weaver, former director of Hardeman County Ambulance Service, responded to the incident at the Whiteville prison. Mr. Weaver testified that the guards employed nonstandard procedure when admitting his ambulance into the facility: guards did not perform an expected search of the ambulance; rather than being "buzzed through each individual section" of the prison, guards held doors open for the ambulance staff;

---

[1] Officer Brown did not testify at trial.

and the guards had cleared the hallways entirely. Mr. Weaver testified that this indicated to him that whatever injury he was responding to was "something massively wrong." Mr. Weaver testified that Officer Boyd had "multiple fractures" on his face and head, and that he was able to feel bones moving under Officer Boyd's skin.

Investigator Shields testified that he identified Defendant as the assailant by reviewing security video footage. Investigator Shields tracked Defendant's movement across multiple cameras from the scene of the incident to his cell after identifying Defendant by his clothing. Investigator Shields testified further that he searched Defendant's cell and found a blood stain on the wall under a hook where "inmates are allowed to hang their towels, [and] washcloths." Investigator Shields recovered a bloody t-shirt that Defendant was "attempting to conceal under himself." He also found a letter addressed to Defendant with the cell number written on it.

James Simons, former Maintenance Director at Whiteville Correctional Facility, testified that he "[didn't] remember exactly where it was at but [he] did see an article of clothing with blood on it." Mr. Simons was unable to confirm that the bloody item of clothing was the t-shirt that had been entered into evidence. Mr. Simons stated that he did not see an article of clothing with "some blood spots . . . taken physically off of [Defendant]." Charles Dewayne Reese, another prison employee who helped restrain Defendant, testified that the bloody t-shirt in evidence was the one retrieved from Defendant's cell.

Investigator Shields photographed Defendant after the assault. Investigator Shields looked at the photographs at trial and identified the left and right hands as belonging to Defendant based on distinctive tattoos. While there were no "signs of an altercation" on the left hand, Investigator Shields noted many abrasions, swelling, and "open wounds . . . consistent with an offensive assault" on Defendant's right hand.

At trial, Officer Boyd testified he had had fifteen surgeries to his face, but doctors told him he would need "three or four more." Officer Boyd testified that he now walks with a cane and has "constant headaches every day." In his victim impact statement admitted during the sentencing hearing, Officer Boyd stated that he suffers from PTSD, depression, and insomnia as a result of the incident.

Defendant did not testify or present any evidence at the initial portion of the trial for aggravated assault.

Defendant was convicted of aggravated assault. After the jury returned this verdict, the court proceeded to the criminal gang enhancement portion of the trial. The State presented evidence that Defendant was a member of the Five-Deuce (52) Hoover Crips gang. Defendant denied being in any gang on the day of the incident and denied

that the incident was gang-related. The jury convicted Defendant for criminal gang enhancement on the aggravated assault charge.

At the February 26, 2016 sentencing hearing, the trial court applied the criminal gang enhancement to the aggravated assault charge and sentenced Defendant for a Class B felony. The court considered as enhancement factors the severity of the injuries inflicted on the victim, Defendant's lack of hesitation in committing a crime "when the risk to human life was high," and Defendant's previous criminal convictions. The court concluded Defendant was a Range I offender and imposed a sentence of twelve years to be served at thirty percent, the maximum allowable sentence within the range. Defendant's sentence was run consecutively with the twenty-five-year sentence he was already serving for second-degree murder.

Defendant filed a motion for new trial on March 24, 2016. On April 7, 2016, this Court filed its decision in *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016), ruling that the gang enhancement statute in use at the time of Defendant's sentencing was unconstitutional due to a lack of a nexus requirement between the underlying offense and the defendant's gang membership. The trial court took Defendant's motion for new trial under advisement while the Attorney General considered appealing *Bonds* to the Tennessee Supreme Court. When *Bonds* was not appealed, the trial court re-evaluated Defendant's sentence. On August 12, 2016, the court vacated the gang enhancement verdict, reducing the aggravated assault conviction to a Class C felony, and imposed a sentence of six years at thirty percent, the "top end" of the range for a Class C felony. At that same hearing, the court denied Defendant's motion for new trial. Defendant filed timely notice of appeal.

*Analysis*

A. Sufficiency of the Evidence

Defendant challenges the sufficiency of evidence to sustain his conviction of aggravated assault. The State contends that there is ample evidence of Defendant's identity as the assailant, the seriousness of the injuries inflicted, and Defendant's intent.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense

beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

As relevant to this case, an assault is defined as "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another" or "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(1)-(2). Aggravated assault is further defined as "[i]ntentionally or knowingly commit[ting] an assault [which] . . . [r]esults in serious bodily injury to another." T.C.A. § 39-13-102(a)(1)(A)(i). Serious bodily injury includes "[e]xtreme physical pain," "[p]rotracted or obvious disfigurement," and "[p]rotracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(34)(C)-(E).

An intentional act requires that the person have the desire to engage in the conduct or cause the result. T.C.A. § 39-11-106(a)(18). "[A] person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist" or "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-106(a)(20).

While Defendant asserts that there was not enough evidence to satisfy "all elements of the crime charged" beyond a reasonable doubt, Defendant does not present an argument as to why the evidence is insufficient. On appeal, we consider all of the evidence in the light most favorable to the State.

The State's evidence established that Defendant assaulted Officer Boyd by striking him over thirty times "in the facial area." Investigator Shields testified that he identified Defendant in the security video and tracked Defendant's movement across several rooms from the scene of the assault back to Defendant's cell. Investigator Shields further testified that Defendant had cuts and abrasions on his right hand "consistent with an

offensive assault." Investigator Shields and other investigators found a bloody shirt in Defendant's cell, along with blood spot on the wall. There was also a letter addressed to Defendant in the cell. All of this evidence is sufficient to identify Defendant as the assailant.

The proof powerfully established that Defendant's attack on Officer Boyd resulted in serious bodily injury. The medical testimony from Ms. Robertson and Mr. Weaver indicated that the bones in Officer Boyd's face had been severely broken. Officer Boyd testified that he has had numerous surgeries on his face and still needs more to "get [the left side of his] face halfway back like [his] right side." Officer Boyd gets constant headaches and now walks with a cane.

Defendant assaulted Officer Boyd with intent and knowledge that his actions would result in serious bodily injury. The number of hits Officer Boyd endured suggests that Defendant either planned to inflict serious bodily injury or at least would have known that his actions would leave Officer Boyd with a serious bodily injury. As such, there was sufficient evidence to convict Defendant on aggravated assault, and we affirm the trial court's ruling. Defendant is not entitled to relief on his claim that the evidence was insufficient.

## B. Sentencing

Defendant also challenges his sentence, asserting it is "excessive in light of the circumstances surrounding the offense." Defendant argues that the trial court used the prior conviction of second degree murder as an enhancement factor twice. The State argues that the trial court did not abuse its discretion in sentencing Defendant to six years at thirty percent.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

Defendant's sentences are within the applicable range. Defendant was convicted of a Class C felony as a Range I standard offender. As such, he was subject to a range of punishment from three to six years on the aggravated assault offense. *See* T.C.A. § 40-35-112(a)(3). While the court found no mitigating factors, it identified several enhancement factors on the record and considered the principles and purposes of the Sentencing Act. The trial court noted that Defendant had no hesitation about committing a crime when the risk to human life was high because he attacked Officer Boyd in such a manner that Officer Boyd's life was in danger. *See id.* § 40-35-114(10). Accordingly, the trial court placed "great emphasis" on the personal injuries Defendant inflicted on Officer Boyd. *See id.* § 40-35-114(6). The trial court also applied enhancement factor (1), that Defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range, because the presentence report indicated that Defendant had at least seven prior criminal convictions. *See id.* § 40-35-114(1). Lastly, the trial court highlighted the fact that Defendant was incarcerated in a penal institution on a felony conviction for second degree murder at the time of the beating. *See id.* § 40-35-114(13)(I). The trial court appropriately applied all enhancement factors, including those relevant to the second degree murder charge. Defendant had criminal convictions beyond the second degree murder which would establish a "history of criminal convictions."

With regard to consecutive sentencing, our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations . . . . if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 860-61 (Tenn. 2013). In other words, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1)) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal."); *see also Bise*, 380 S.W.3d at 705.

In this case, the trial court determined consecutive sentences were necessary because Defendant has a long criminal record and is a "dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life was great." T.C.A. § 40-35-115(b)(2), (4). "Any one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). However, when consecutive sentencing is imposed based upon the dangerous offender classification, *see* T.C.A. § 40-35-115(b)(4), the record must also demonstrate that the total sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts" by the defendant. *Pollard*, 432 S.W.3d at 863 (quoting *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)). "The need for the additional findings before imposing consecutive sentencing on the basis of the 'dangerous offender' provision arises, in part, from the fact that this category 'is the most subjective and hardest to apply.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999)).

In our view, the trial court made the requisite *Wilkerson* findings to support its determination that Defendant is a dangerous offender. The trial court found that Defendant's "tremendous beating" of Officer Boyd was "one of the most horrible beatings the [c]ourt's ever seen" and "indicates little or no regard for human life and no hesitation about committing a crime where the risk to human life is great" because the attack "did not appear that it was provoked in any way." The trial court determined that confinement was necessary to protect the public from further criminal acts and was reasonably related to the severity of the offense. In addition, the trial court implicitly recognized the significance of Defendant's extensive criminal record by noting that

Defendant was already incarcerated on a murder conviction. The trial court did not abuse its discretion in sentencing Defendant to serve his time for the aggravated assault conviction consecutively to his second-degree murder conviction.

The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. *Id.* § 40-35-303(b). In addition, "the defendant is not automatically entitled to probation as a matter of law." *Id.* § 40-35-303(b), Sentencing Comm'n Cmts. Rather, the defendant must demonstrate that probation would "'serve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. *See State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978)). The principles of sentencing also require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" *Id.* § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (citing *State v. Poe*, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

In light of the severity of the "brutal crime," the trial court saw "no reason" to go through probation considerations. The court noted that the "outrageous" crime was committed while in custody. The pre-sentence report catalogued Defendant's seven prior criminal convictions and his revocation of probation on August 17, 2005. The record shows that the trial court considered the relevant sentencing considerations, and Defendant has not established that the trial court abused its discretion in denying alternative sentencing or "otherwise overc[a]me the presumption of reasonableness afforded sentences [that] reflect a proper application of the purposes and principles of our statutory scheme." *See Caudle*, 388 S.W.3d at 280.

The sentence imposed by the trial court was logical and well-reasoned.  It does not cause injustice to Defendant.  It certainly is no greater than that deserved for such a brutal attack.  Defendant is not entitled to any sentencing relief in any manner.

*Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE